Wright
v.
Whithead
et al.

A. Z. T. Wright v. Marshall Whithead and Learned Read.

*(In Chancery.)*

Where a mortgagee gave public notice of the sale of the mortgaged prem-
ises at auction and engaged to give a title of warranty and immediate
possession, and the mortgagor consented to such sale and aided and as-
sisted in circulating notice thereof and received the amount of the pur-
chase money, and the purchaser went into possession and made large
improvements; *it was held* that the mortgagor could not afterwards redeem
the premises, nor compel the purchaser to account for the rents and
profits.

A purchase of a right of redemption, under an agreement to pay a certain
sum if the purchaser succeeds in obtaining a decree, permitting him to
redeem the premises, or nothing if he fails in obtaining such decree, is
illegal and void in a case where the person in possession has been in
possession for a long time under a deed of warranty, intended to convey
the fee of the land.

This was an appeal from a decree of the court of chan-
cery, dismissing the orator's bill.  The bill was brought to
obtain a decree allowing the orator to redeem certain mort-
gaged premises, and for an account of the rents and profits.

From the bill, answers, and testimony, it appeared that
Rufus Elmore was formerly the owner of the premises, and,
on the 25th day of May, 1822, conveyed them to Arad
Hunt, by a deed of mortgage; that, on the 24th day of
March, 1826, Hunt conveyed the premises to one Pomeroy,
by deed of warranty, and that the present defendants held
the premises by deeds of warranty from Pomeroy and his
grantees, executed long before the year 1839.   In August,
1839, Elmore deeded the premises to the orator.   All the
deeds were duly recorded soon after their execution.

It further appeared that Pomeroy purchased the premises
at auction ; that, previous to the auction sale, notice thereof
was given by an advertisement inserted in the newspaper,
printed at Brattleboro', in which it was stated that a title of
warranty and immediate possession of the premises would be
given; that Elmore was active in circulating the advertisements,
giving notice of the terms of the sale, and assisted at the sale ;
that, previous to the sale, he declared that he could not, and

Windham,
*February,*
1842.

Wright
*v.*
Whithead
*et al.*

did not expect to redeem the premises, and that he had authorized Hunt to sell them either at public auction or private sale; that the auction was well attended and the premises were sold for nearly or quite their full value at the time of the sale ; that Elmore immediately gave up the possession to Pomeroy ; that the whole purchase money had been applied to Elmore's benefit, in extinguishing his debt, and he had declared himself fully satisfied ; that the purchasers had made large and valuable improvements by building and repairing buildings, and that Elmore himself had done a job for the purchasers in building a barn or shed on the premises. The defendants and their grantors had been in possession of the premises more than thirteen years when this bill was filed.

It further appeared that the consideration of Elmore's deed to the orator was the orator's note to Elmore for one hundred and fifty dollars, which was to be paid if the orator succeeded in obtaining a decree, permitting him to redeem the premises; but if he failed of obtaining such decree, then the note was to be void.

*W. C. Bradley,* for orator.

The orator has, within the period prescribed by law, brought the present bill, praying to be let in to redeem. *Wells* v. *Morse,* 11 Vt. R. 14. The defendants, in their answser, raise two preliminary questions as to the orator's deed.    1st. That he purchased the equity of redemption and gave his note therefor with a condition that if the title to redeem should fail, the note should be void.    This if proved, shows nothing improper.    It is neither maintenance nor champerty, nor is it unfair, for the orator might be really desirous of purchasing the land, and, besides helping the mortgagor, the parties might take measures to prevent suits, in case of unintentional failure.    Even a prowling assignee, purchasing for an inconsiderable sum after the equity had been for many years abandoned, was let in to redeem.    3 Atk. 314, Anon. Powell on Mortgages, 347.    4 Kent's Com. 156, 159, 1st ed.

2. The defendants insist that the possession was adverse. But a mortgage is not within the statutes of 1807. *Converse* v. *Searls,* 10 Vt. R. 578.    Besides, having purchased under the mortgage, they could not, by any deeds between them,

WINDHAM,
*February,*
1842.

Wright
*v.*
Whithead
*et al.*

hinder his title, which was once a mortgage, being still a mortgage, *Catlin* v. *Chittenden,* Bray. 163; 4 Kent, 152; nor as his assignees could they hold adversely to the mortgagor except for their pledge.

The defendants then take the ground that the equity of redemption was discharged by Elmore before he conveyed to the orator and this is attempted to be proved, 1st by his acts, 2d, by his acknowledgments. None of Elmore's acts impeach the equity of redemption. The mortgagee, in his own way and manner, sold his right to the premises. The presence, or even encouragement, of the mortgagor was no waiver of his rights, or any assurance that he was to join in the warranty mentioned in the advertisement; and it is evident, from the fact that the purchaser took his deed from Hunt alone, (who is now dead,) that he considered the warranty of that wealthy person one good inducement for him to omit all further care and attention to the perfecting of his title, and it was the interest of Elmore to give up the possession of the premises, and he might very fairly wish some of his particular acquaintances to purchase, thinking that they would be more likely to indulge him as to time of redemption. Moreover, it is to be recollected that, treating the sale as an assignment, it is quite proper to obtain the consent of the mortgagor, from the circumstance that it may effect the future accounting to him for the rents and profits, or the making of parties in any future bill to redeem. Powell on Mortgages, 203. And if it was not intended by Hunt as an assignment, then it is to be considered as an attempt, on the part of the mortgagee, to sell and *transfer* the pledged estate without foreclosure and without the proper concurrence of the mortgagor, which cannot be done in these cases. For if a *freehold estate* be held by way of mortgage for a debt, then it may be laid down as an invariable rule that the creditor must obtain a decree for a sale. There never was an instance in which the creditor, holding *land* in pledge, was allowed to sell it at his own will and pleasure. It would open a door for the most shameful imposition and abuse. Ch. Kent, in *Hart* v. *Ten Eyck,* 2 J. C. R. 101.

2. As to Elmore's acknowledgments. It is contended that his mere statements of his having put the premises into Hunt's hands to sell, though such an expression may well

WINDHAM,
February,
1842.

Wright
v.
Whithead
et al.

comport with the pledging of property to near its value, ought not to be received under our statute. The mortgagor is the real owner of the land, and is to be regarded as such to every purpose except the right of possession, (*Barkhamstead* v. *Farmington*, 2 Conn. 600,) and his title cannot be taken from him but by a judgment of court, where he is protected, or by a writing, or its equivalent, speaking for itself, as lapse of time, &c., and if a *power to sell* can be proved by parol, in this way the statute would be rendered nearly useless. Especially ought it not to be allowed in these cases where the courts, from the unequal condition of the parties, look with jealousy on endeavors of the mortgagee, by private bargains, to divest the mortgagor of his equity. 4 Kent, 137. *Holdridge* v. *Gillespie*, 2 J. C. R. 34. Accordingly, the cases are predicated on written instruments. *Catlin* v. *Washburn*, 3 Vt. R. 42; *Harrison* v. *Phillips' Academy*, 12 Mass. 465; *Austin* v. *Bradley*, 2 Day, 466. The same remarks apply to the attempted inference of a release of the equity of redemption, from certain confessions supposed to have been made by Elmore long ago in certain conversations with persons having no particular interest in recollecting the expressions. ' It was once,' says Chancellor Kent, ' observed ' in the supreme court, 6 J. R. 21, that acknowledgments of ' the party as to title to *real property* are generally a danger- ' ous species of evidence, and though good to support a ten- ' ancy or to satisfy doubts in cases of possession, they ought ' not to be received as evidence of title, as it would counteract ' the beneficial purposes of the statute of frauds.' That doctrine strikes me as just and sound, and principles are essentially the same in both courts. *Marks* v. *Pell*, 1 J. C. R. 598. Nor is it like the case of a discharge of a mortgage, which is but a chattel interest; *Toby* v. *Reed*, 9 Conn. 216; 4 Kent, 152; for there the performance of the condition or redemption of the pledge is a matter *in pais*, although our statute has provided a manner of proving it by the record if parties so choose. But this is a complete release of the title, if any thing, and amounts to a quit-claim by the party. If, however, we were to take the testimony as admissible, it no where appears that Elmore intended his right of redemption. It may be said of this defence as was said by the Chancellor, in *Marks* v. *Pell*, 1 J. C. R. 599; ' it rests entirely

WINDHAM,
February,
1842.

Wright
v.
Whithead
et al.

'on certain conversations which arc extremely liable to be.
'misunderstood or perverted, and yet are very unavailable
'as they are sworn to under the cover of time and the death
'of the party.'

On the whole, the orator contends that he is entitled to
redeem, and that an account should be taken.

*J. D. Bradley* argued for defendants, and, to the point
that the sale of the premises, by Hunt, with the approbation
and consent of Elmore and the acts and admissions of El-
more in relation thereto, operated to convey the equity of
redemption, cited *Gregory* v. *Mitchel*, 18 Ves. 332; 1
Dane's Ab. 246; 1 Story's Eq. 196 ; 1 Maddock, 255, 262,
3–4; 10 Ves. 306; 1 Story's Eq. 202, 203, in note, 216,
217, in note ; *Pilling* v. *Armitage*, 12 Ves. 85 ; *Burrows*
v. *Lock*, 10 Ves. 145; Am. Ch. Dig. 339, referring to 6
Johns. Ch. R. 393 ; Id. 355 ; 2 Pet. Cond. R. 408 ; and, to
show the defendant's possession adverse to orator's claim of
title, he cited *Stevens* v. *Dewing*, 2 Aik. 112; *Tuttle* v.
*Reynolds*, 1 Vt. R. 80; and, to the point that the purchase
by the orator of Elmore's right to redeem was champerty,
and, consequently, void at common law, he cited 6 Dane's
Ab. 740, 1, 2; *Woods* v. *Downs*, 18 Ves. 125, 6–7;
*Stevens* v. *Bagwell*, 15 Ves. 156 ; 8 Johns. R. 483; Id.
228; *Van Dyck* v. *Van Buren*, 1 Johns. R. 357.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The conclusion which we arrive at,
in relation to the facts in evidence, renders it unnecessary
that we should pass on all the principles of law which have
been discussed. The object of the bill is to redeem the
premises from a mortgage executed by one Rufus Elmore to
to Arad Hunt.

From the facts found by the court, it is beyond controversy
that Pomeroy, in purchasing the premises, intended to pur-
chase an estate in fee ; that Hunt intended to sell such an
estate, and that Elmore consented that he should do so, and
receive the proceeds of the sale. Under these circumstances,
Elmore would have been compelled, in chancery, to deed
to Pomeroy, if such a conveyance were necessary to perfect
the title of Pomeroy, and neither Elmore, nor his assignee,

WINDHAM,
*February,*
1842.

Wright
*v.*
Whithead
*et al.*

the orator, can now disturb the defendant's title or possession.

On another ground, the court would feel bound to dismiss the bill of the orator. He does not stand in as favorable a light as the prowling assignee who bought in an equity of redemption for an inconsiderable sum, and in whose favor Lord Hardwick felt bound to decree a redemption. Elmore has permitted the defendants and Pomeroy, under whom they claim, to remain in possession for a period of over thirteen years, making large improvements and having no reason to doubt their title. He has not disturbed nor attempted to disturb them. The orator purchased this suit, under an agreement to divide whatever sum should be recovered. If he succeeded, he was to pay one hundred and fifty dollars; if he failed he was to pay nothing. This was a species of champerty or maintainance which cannot be countenanced in a court of equity. It was an unlawful bargain, to deprive the possessors of the land of a title which they, and others, supposed and believed to be legal and beyond question. The orator should not be permitted, under this unlawful bargain, to have a remedy in this court, even if it were doubtful whether Elmore could not have had relief in equity.

On either of these grounds, we think the orator cannot maintain this bill, and the decree of the chancellor, dismissing the bill, must be affirmed with additional cost.